The Chancellor.
The bill alleges that the complainant was twenty-three years of age on the 22d day of March, 1855, and that his mother was the sister of the wife of John H. Vreeland, one of the defendants; that the said John H. Vreeland and his wife have no children ; that they, as soon as the complainant was born, requested his father and mother to let them, the said John H. Vreeland and wife, take the complainant, and permit them to adopt and keep him as their son ; and as an inducement for them to do so, they promised his parents to treat the complainant as their own son, and that all the property they had should be given to the complainant, so that it should belong to him at the death of said Vreeland and Ms wife.
That after much persuasion, and in addition to the promise aforesaid, promising the complainant’s parents that- he should be cared and provided for by them as their own should have been cared and provided for, the parents of the complainant permitted said Vreeland and wife to adopt the complainant as their own son, and accordingly, when the complainant was only eight weeks old, said Vreeland and his wife took the complainant to church, and had him baptized with the name of said Vreeland; *372 and when the complainant was about one year old, they took him to their own house, and from that time until he was about twenty years of age, and until after his marriage, he was known and was called by the name of John H. Vreeland.
That the complainant was married on the 10th of April, 1841, and that he continued to live with, and worked for said Vreeland, and as his son, from the time he first went to live with him until about a year after he was married; that he, about a year after he was married, commenced housekeeping adjoining the farm of said Vreeland; but he continued to work for him on his farm all the time until he was about twenty-five years of age, and after that he continued to work for said Vreeland until the spring of the year 1854, since which time he has not worked for said Vreeland, nor been required to do so; that while complainant lived with Vreeland and wife, he called them “father” and “mother,” and supposed they were his father and mother, and did not know to the contrary until he was ten or twelve years of age.
That when the complainant was about eight years of age the said Vreeland was in ill health, and was about to make his will, but before doing so, he sent for complainant’s father; that he inquired of his father whether he intended to allow the complainant to remain with him as his son, stating that he was about making his will, and if the complainant was permitted to remain with him as his son, he intended to devise and bequeath to him all his property; that the complainant’s father then, in answer to said Vreeland, replied, in substance and effect, that if he, Vreeland, intended and would do for the said eomplainant'as he had promised, he, the complainant’s father, did not intend to take the complainant away, and never had, and thereupon said Vreeland told the complainant’s father that he did intend to do for the complainant as he promised when he first took him.
That complainant is informed, and believes, that near *373 to the time of the said interview, the said Vreeland did make and execute, in due form of law, a will, by which he devised and bequeathed to the complainant all his property, providing for his wife, but after her death with remainder to the complainant; that when the complainant was about sixteen years of age, his father asked said Vreeland whether the complainant had not better learn a trade, to which said Vreeland replied, that there was no use in the complainant’s doing so; that he could not spare the complainant, nor put any one in his place, for two hundred dollars a year, who would do as well at his work and business; and that li e, said Vreeland, would see that the complainant had enough, and was better provided for than if he learned a trade.
That the father of the complainant, relying upon the agreement with Vreeland, shortly before his death, made his will, hearing date October 3d, 1842, by which he gave his wife his property during her life, or widowhood, and divided the remainder thereof among all his children, excepting the complainant, to whom nothing was given ; that the value of his father’s estate was about $7000 ; that complainant had six brothers and one sister, and the only reason why a share of the property was not given to complainant was in consequence of the repeated promises and assurances aforesaid of said Vreeland, and that he stated this as his reason to the scrivener who drew the will; that the complainant's father died in October, 1842, without revoking or altering his said will.
That the said Vreeland not only gave to the complainant’s father the promises and assurances aforesaid, but he did also frequently make like promises and assurances to the complainant himself, from the time he was sixteen years of age until the year 1854; and the complainant believed in and relied upon those promises and assurances, and, in consideration thereof, lived with and worked for the said Vreeland, and endeavored, to the best of his power and ability, faithfully and devotedly to serve him, and *374 to deport himself in all respects as a dutiful son should towards his father; and until after the second marriage of the said Yreeland, the service and conduct of the complainant towards said Yreeland were satisfactory to him, and he frequently expressed his approbation of the conduct of the complainant.
That between the years 1828 and 1843, said Yreeland made two different wills, by both of which, after making provision for the support of his wife during her lifetime, he bequeathed nearly all the remainder of his property to the complainant.
That on or about the 4th of January, 1843, the said Yreeland made and executed another will, by which he gave legacies to two persons, amounting to fifty-one dollars, bequeathed some personal property to the complainant, the residue to his then wife, and gave to the complainant all his lands and real estate, after the death of his said wife, subject only to the payment of nine dollars, annually, to the Dutch church, subject to certain conditions, upon the happening of which the said annuity should cease ; that in the said last will, the said Yreeland calls the complainant “ my adopted son, John Henry Y. Yan Dyne,” and “ my beloved adopted son, John Henry Y. Yan Dyne, the son of Nicholas M. Yan Dyne.”
That subsequently, but before the death of his wife Rachael, the said Yreeland made another will, by which he made some changes from his other wills to different logatees, but no change as regards the complainant; that shortly after the death of his said wife Rachael, the said Yreeland made another will, by which he devised and bequeathed to the complainant all his real and personal estate, excepting some small bequests to others, not amounting in the aggregate to over one hundred dollars, and which said last will is still in possession of said Yreeland.
That in the month of September, 1849, the said Yrceland intermarried with one Maria Ackerson, a widow, and. shortly after,said marriage said Yreeland made *375 another will, by which, as said Vreeland informed the complainant, after providing for the payment to his said wife of a certain sum yearly, during her natural life or widowhood, for her support, he gave to the complainant the residue of his property, excepting one or two small and unimportant legacies.
That about a year after his second marriage, the said Vreeland made another will, by which he gave nothing whatever to the complainant; and that about the spring of the year, 1854, said Vreeland made another will, by which he left none of his property to the complainant; that since the year 1853, said Vreeland made several other wills besides those particularly mentioned, in all of which walls, -which -were made prior to his second marriage, he devised and bequeathed to the complainant the principal part of his property.
That the complainant lived on the most intimate and friendly terms -with said Vreeland up to the time of Vreeland’s second marriage; that said Vreeland received the exclusive services of the complainant from the time he was able to work until he was twenty-five years old, and continued to work for him, and do his business until he was thirty-three years old; that the complainant never went to school, but was all his time employed in working on the farm of said Vreeland, performing the duties and work of a common laborer, and never received any pecuniary compensation for his services.
That in a few months after the second marriage of said Vreeland, his manner towards the complainant became changed, and he did not exhibit the same kindness of feelings or confidence towards the complainant as theretofore ; that this change of conduct was owing entirely to a hostile feeling which his second wife, soon after her entrance in the family, entertained towards the complainant ; that notwithstanding this change¿of feeling towards complainant, he remained with said Vreeland up to 1854, when he left him; that there never was any open rup *376 ture between said Vreeland and complainant, and complainant continued to hold out that it was his intention to leave the complainant all his property; that said Vreeland is now about sixty-seven years of age, and much broken down'in mind and body.
That the present wife of said Vreeland had, by her first husband, three children, two sons and one daughter; that the said daughter intermarried with, and is now the wife of John T. Brickell, one of the defendants; that from the year 1849, said Brickell and wife were frequent visitors of said Vreeland’s family, and were informed by said Vreeland, and well understood the relationship existing between said Vreeland and the complainant, and the agreement on the part of Vreeland to give complainant all his property.
That, on or about the 8th of November, 1854, for the fraudulent purpose of depriving the complainant of the benefit of the said agreement with the said Vreeland, the said Vreeland and wife, executed and delivered to the said Brickell and wife a deed, by which said Vreeland and wife conveyed all said Vreeland’s real estate to said Brickell and wife, to their heirs and assigns for ever; that said Vreeland owned the said real estate long before the complainant went to live with him; that, he has acquired no property since; that the said real estate so conveyed is worth at least $8500.
That the consideration mentioned in the said deed is $6000; that no part of the said consideration has been paid, nor in any way secured to be paid, but that it is the understanding between the parties to the said deed that the consideration expressed in said deed should not, or any part thereof, be required to be paid ; that at the time of the delivery of the deed, the said Brickell executed and delivered to said Vreeland a lease of said real estate described in said deed for the natural life of said Vreeland and wife, and the survivor, for a small nominal rent, and that such lease was the only consideration given, or *377 agreed to be given, for the real estate so conveyed; that after said conveyance, Brickell and wife moved on tbe farm, and give out that they are working it on shar e s that at tbe time of said conveyance, Vreeland had but little personal property, except what was about the farm, one half of which he sold to said Brickell; that in 1855, when the assessor called upon said Vreeland to assess him for taxes, he told the assessor that all the property he had was §600, and for that amount only he was assessed ; that he further told him he had received nothing, and was to receive nothing for his farm.
The bill charges that the conveyance was made by Vreeland and wife, and was accepted by Brickell and wife for the purpose of defrauding complainant, and of depriving him of the benefit of tbe agreement made on bis behalf with said Vreeland; that said Vreeland declares he will not fulfil said agreement; that ho has disposed of his property for the purpose of placing it out of Ms power to do so. It concludes with the following prayer, that the said Brickell and wife may be decreed to be trustees to hold the laud during the lives of Vreeland and wife for their use and benefit, and, upon tbe death of the survivor, to convey tbe same in fee simple to the complainant, or that the said deed to Brickell and wife, as against the complainant, may he decreed fraudulent, and that they may be required to reconvey the said lands to the said Vreeland, and the said Vreeland be decreed to dispose of said lands, when thus reconveyed, in such manner that said lauds will, at the death of the said Vreeland, go to, vest in, and belong to the complainant in fee simple; or if the court should be of opinion that the complainant is not entitled to either of the reliefs aforesaid, that in that case the damages which the complainant has sustained by reason of said Vreeland’s refusing to perform his part of said agreement may be ascertained and determined in such manner as this court *378 may direct, and that the damages, when ascertained, may be decreed to be a lien upon the said lands, &c.
To this bill the defendants have demurred. All the facts are admitted by the demurrer, and must be taken as true. The agreement upon which the bill is founded was in parol, but its performance, or part performance, is set up to avoid the statute. Although the demurrer admits the facts of the bill, the agreement being in parol, the complainant is entitled to the benefit of the statute, unless the part performance, which is set up to avoid its operation, is of a character to have that legal effect. The demurrer admits the parol agreement, and insists that it is not such a parol agreement as will take the case out of the operation of the statute of frauds, and deprive the defendant of the benefit of it as a defence. A defendant may answer and admit the parol agreement; but if, at the same time, he insists on the protection of the statute, no decree can be made against him merely on the ground of the admission of the agreement. ■ A demurrer is in effect the same as an answer, which admits the parol agreement, but claims the benefit of the statute. It admits the agreement, but denies the right of the complainant to enforce it. But if the bill alleges such a part performance as will take the agreement out of the statute, the demurrer is such an admission of the part performance as will preclude the defendant from the benefit of the statute. The bill must state the facts which are relied upon as part performance. When the facts are admitted by the demurrer, the court must determine whether the facts relied upon do constitute part performance.
In this case, if the agreement, which is the ground of the bill, is of such a character as could be enforced by either party if it were in writing, then, I think, there can be no doubt but that there has been such a part performance in this case by the complainant as will take the agreement out of the operation of the statute. The bill *379 alleges that the agreement has been fully performed by the father of the complainant, one of the parties by whom it was made, and by the complainant, upon whom it imposed certain duties and obligations. The facts stated show that the complainant and his father have performed their part of the agreement as fully as such an agreement could be performed. There is nothing more for them to do. The complainant cannot be denied his redress by the mere interposition of the statute. The question is, is it an agreement of a character which can be enforced in equity ?
It is objected that this agreement cannot be enforced by the complainant, because he was not a party to it. But he was the party for whoso benefit the agreement was made. All the advantages of the agreement were to accrue to him. The consideration was but partially paid by his father: the most valuable portion of it, and that most beneficial to the defendant, Vreeland, has been rendered by the complainant himself. The party for whose benefit the agreement is to be performed, and especially if any valuable portion of the consideration has been rendered by him, has the legal right to enforce it. It is of no consequence that the promise to fulfil it was not made directly to the person who is entitled to the remuneration. It is enough if it was made by some one who had authority to make it on his behalf. Oddham v. Litchford, 2 Vern. 506; Devenigh v. Baines, Prec. in Ch., case 3; Benton v. Poole, 1 Ventres 318; Schermerhorn v. Vanderheyden, 1 J. R. 139. I think this suit is rightly brought by the complainant.
Is the complainant entitled to any relief upon the case made by the bill? The case is a very peculiar one, and has its difficulties. The complainant has been greatly wronged. lie has devoted the prime of his life to the service of the defendant, Vreeland. lie served him twenty-five years, upon the faith of an agreement, made, at the solicitation of the defendant, with the complain *380 ant’s father, that for such service the complainant should he provided for, at the defendant’s death, as his own son. He was deprived of a participation in his father’s property upon the assurances of the defendant, made to that father, that he need make no provision for his son, because the defendant, in fulfilment of his agreement, would stand towards him in the place of his parent, and, as he had stipulated, would provide for him. hy will. He received the complainant into his family upon the terms of the agreement, and the services of the complainant were rendered, and were accepted upon the expectation of that agreement’s being carried out in good faith. The defendant has repeatedly acknowledged his obligation to fulfil the agreement, by making different wills, from time to time, in accordance with its provisions and the understanding of the parties. He has verbally renewed the agreement frequently with the complainant, and induced him to continue his services, assuring him that the fulfilment of the agreement by him should be a reward to the complainant for his fidelity. For twenty-five years the defendant accepted the services of the complainant,' upon the understanding that the agreement was the basis of the relationship existing between them. How the defendant, for the sole purpose of defrauding the complainants, has fraudulently put out of his hands all of his property out of which he was to make the provision which he had stipulated to make by the agreement.
Why should not the complainant have redress ? It is said the character of the agreement is such that the court' ought not to entertain a hill upon it. There is no consideration of public policy which should forbid the court’s countenancing such an agreement. Considering the situation of the parties, and their circumstances in life, it was beneficial to all parties, and cannot be considered as injudicious or unreasonable. The father made a beneficial arrangement for his offspring, and Vreeland’s affections were satisfied by the adoption of a son. The agreement *381 is alleged to have been unreasonable, because it deprived Yreeland of the free disposal of his property. But this is not so. It provided him with a son, and only obligated him, in the disposal of his property, to make such provision for the child of his adoption as might reasonably be expected from parental obligation and affection. There was nothing unnatural, situated as he was, in his assuming such an obligation, and of his making the complainant the object of his affections. It did not deprive the defendant of the power of disposing of his property as he might see fit for his own comfort and benefit. Johnston v. Hubbel, 2 Stat. 335 and cases; Gregor v. Kemp, 5 Swans. 404. Complaint is not now made that he has so disposed of his property, but that he has disposed of it, by putting it out of his hands, for the sole purpose of defrauding the complainant, and of depriving him of the benefit of the agreement. It is said that the agreement is not mutual, because Yreeland could not enforce it. But it is too late for a party who has accepted the performance of an agreement from the other party, and has induced him to perform his part of it, to raise the objection that he is not bound by the agreement, because he could not enforce that performance if it had been refused. It is further said, that the court ought not to entertain a bill upon such ail agreement, because of the. embarrassments that exist in the court’s enforcing its specific performance. But the coui’t must dispose of this objection according to the embarrassments existing at the time its jurisdiction is invoked. If, at such time, the execution of the agreement is so surrounded by difficulties that they cannot be surmounted without the court’s doing real injustice to one of the parties, and without making its execution burthensome and oppressive, the court, in view of such consequences, may properly refuse to interfere.
It appears to me that no difficulty exists, in this case, to the court’s affording to the complainant adequate relief without doing the least injury to any of the defend *382 ants. The pleadings admit that Yreeland and his wife have conveyed the property to Buckell and his wife for a nominal consideration; that the conveyance was made and accepted for the fraudulent purpose of defeating the agreement; and that, for a nominal consideration, Buck-ell and his wife have given to Yreeland and his wife a lease of the property during their lives. A decree of this court, declaring Buckell and wife trustees to hold the property during the lives of Yreeland and wife for their benefit, and after the death of the one that survives to convey the property to the complainant, will injure no one, and will secure to the complainant the benefit of the agreement. It will work no injury to Buckell and wife. They paid nothing for the property, and cannot complain that they are deprived only of the opportunity of reaping the fruits of their fraud. It can do no injury to Yreeland and wife, for it secures to them all the interest they have in the property — its enjoyment during their lives. But it is not necessary for me to decide now to what specific relief the complainant is entitled. It is enough for me to be able to see that a decree can be made without serious detriment to any of the parties. Further consideration may suggest a better and more appropriate remedy. The demurrer must be overruled with costs.